UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 06-388-KSF

STONESTREET FARM, LLC                                                                 PLAINTIFF

v.                                              **OPINION & ORDER**

BUCKRAM OAK HOLDINGS, N.V., *et al*                                      DEFENDANTS

* * * * * * * * * * * * * *

     This matter is before the Court upon the motion of the defendant, Frederic Sauque, to strike all or portions of the plaintiff's complaint [DE # 27], as well as Sauque's motion to dismiss the plaintiff's complaint [DE # 29].  Having been fully briefed, these matters are ripe for review.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

     This civil action arises out of the efforts of Jess Stonestreet Jackson, owner of the plaintiff, Stonestreet Farm, LLC ("Stonestreet"), to enter into the thoroughbred breeding business.  The relevant facts, as alleged by Stonestreet in its Complaint and subsequent pleadings, are as follows. Beginning in 2003, Jackson developed a business plan which included the purchase of mares and sires for breeding and the purchase of yearlings and two year old horses for racing before breeding. The business plan also called for the purchase of substantial acreage in Kentucky.

     In order to carry out this business plan, Jackson enlisted assistance from various third parties, including defendants Bruce Headley and Brad Martin, who advised him with respect to the purchase of thoroughbred horses and related matters.  Jackson and Headley entered into a partnership whereby

1

they would co-own certain thoroughbred horses and Headley was responsible for the boarding, breaking, training and racing of those horses, as well as the valuation of those horses for breeding purposes.  Martin was enlisted to monitor the training of the partnership horses, and to report to Jackson on their progress.  Martin was paid a monthly fee for his services.

In September 2003, Jackson retained defendant Emmanuelde Seroux, who operated through defendant Narvick International, Inc., as a bloodstock agent and bloodstock advisor.  Jackson alleges that he relied on the advice of the defendants with respect to the purchase of thoroughbred horses at public auctions, and that he relied on the advice and expertise of de Seroux and Narvick with respect to the selection and purchase of thoroughbred horses through private transactions.

Jackson also enlisted the advice of de Seroux, Narvick, Headley and Martin with respect to the purchase of land for his thoroughbred operation in Kentucky.  Jackson and these defendants visited several Central Kentucky properties, including Buckram Oak Farm, then owned and controlled by Buckram Oak Holdings, N.V. ("Buckram Oak"), and operated by Mahmood Fustok.  Unknown to Jackson, Fustok had previously informed interested buyers that the purchase price for Buckram Oak Farm was $15.0 million.  Thomas Biederman, a local real estate agent, had previously listed the property for $16.0 million.  According to Jackson, defendant Frederic Sauque acted as the principal agent and negotiator for Fustok and Buckram Oak, working with Headley, Martin, de Seroux and Narvick, on Jackson's possible purchase of the property.

Jackson alleges that Headley, Martin, de Seroux and Narvick recommended that Buckram Oak Farm be purchased for $17.5 million, advising Jackson that Buckram Oak and Fustok had invested over $22.0 million in the property and would not agree to sell it for less than $17.5 million.  At the urging of the defendants and based on their representations, Jackson alleges that he purchased

2

Buckram Oak Farm for $17.5 million.

In May 2005, Jackson alleges that he became aware of certain irregularities regarding the defendants and began to conduct his own investigation into their activities. Jackson alleges that de Seroux and Narvick had arranged for the private purchase of certain horses in Europe by Jackson at fraudulent and inflated prices. Jackson alleges that Sauque helped to facilitate these fraudulent transactions.

Jackson also learned that Buckram Oak and Fustok had been ready, willing and able to sell Buckram Oak Farm for less than $16.0 million. Jackson alleges that de Seroux, Narvick, Martin and Headley urged Jackson to pay the inflated price because they stood to collectively make at least $500,000 in kickbacks and bribes from the sell of the property. Jackson also alleges that the defendants attempted to extract bribes and kickbacks from other prospective real estate deals in Kentucky.

Jackson filed this civil action on November 22, 2006. Count One asserts a claim of fraud against all the defendants based on the purchase of Buckram Oak Farm. Count Two asserts a breach of fiduciary duty claim against defendants de Seroux, Narvick, Headley and Martin with respect to the purchase of Buckram Oak. Count Three asserts a claim for unjust enrichment against all the defendants. Count Four seeks a specific accounting of all payments, commissions, secret profits or other things of value paid to any of the defendants in connection with the purchase of Buckram Oak Farm. Count Five seeks disgorgement of any profits, fees, gratuities, commissions, or other forms of compensation paid to any of the defendants with respect to the Buckram Oak Farm purchase. Count Six alleges civil conspiracy against each defendant. Count Seven alleges that Buckram Oak breached the Purchase Agreement when it arranged for and/or facilitated the payment of the bribe

or kickback to de Seroux, Headley and Martin.  Finally, Count Eight alleges that the defendants wrongfully received and retained funds in violation of duties owed to Stonestreet in connection with the purchase of Buckram Oak Farm.  Stonestreet seeks judgment against all the defendants.

## II.     SAUQUE'S  MOTION TO STRIKE

In response to Stonestreet's Complaint, Sauque has filed a motion to strike pursuant to Rule 8(a)(2), 8(e)(1), and Rule 12(f) of the Federal Rules of Civil Procedure.  In general, Sauque argues that Stonestreet's Complaint is argumentative in nature and does not comply with the requirement for a short and plain statement of the claim.  Sauque specifically objects to Paragraphs 13-20 of Stonestreet's complaint, which allege fraud with respect to certain equine transactions.  Sauque argues that these allegations were the subject of an action before the Superior Court of California, which determined that they were baseless and untrue. *See In Re: Four Star Stables, LLC, Stonestreet Thoroughbred Holdings, LLC and Jess Stonestreet Jackson v. de Seroux, et al*, Case No. 853949. Additionally, Sauque argues that the allegations are immaterial to the purchase of Buckram Oak, which is the only issue before this Court.

Sauque also objects to Paragraphs 28-32 of Stonestreet's complaint, which allege attempts by the defendants to extract bribes and kickbacks from other possible real estate deals.  Sauque argues that these allegations do not support any of Stonestreet's causes of action, and are merely an attempt to discredit Sauque.  For these reasons, Sauque moves the Court to require Stonestreet to comply with Rule 8(a)(2) and (e)(1), or in the alternative, to strike the immaterial and scandalous portions of Stonestreet's Complaint pursuant to Rule 12(f).

In response, Stonestreet argues that the facts pled are relevant and material to the context in which Stonestreet's claims arise; specifically, that the fraudulent horse transactions are highly

4

relevant to the fraudulent realty transaction both in manner and time.  Additionally, Stonestreet contends that Sauque has "blatantly misled" the Court regarding the nature and effect of the California court's ruling.  Stonestreet argues that the California court has rendered no adjudication on the merits regarding Sauque's activities; rather it was strictly limited to matters involving Sauque's contacts with California which would subject him to personal jurisdiction.  Accordingly, Stonestreet contends that Sauque's motion to strike should be overruled.

Rule 8(a) of the Federal Rules of Civil Procedure provides as follows:

> A pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief . . . .

Fed.R.Civ.P. 8(a)(2).  Rule 12(f) of the Federal Rules of Civil Procedure authorizes a district court to strike from a pleading "any insufficient defense or any redundant, immaterial, impertinent or scandalous matter."  Fed.R.Civ.P. 12(f).  However, motions to strike are viewed with disfavor, and the United States Court of Appeals for the Sixth Circuit has held as follows:

> Partly because of the practical difficulty of deciding cases without a factual record it is well established that the action of striking a pleading should be sparingly used by the courts.  It is a drastic remedy to be resorted to only when required for the purposes of justice.  The motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy.

*Brown & Williamson Tobacco Corp. v. U.S.*, 210 F.2d 819, 822 (6th Cir. 1953) (internal citations omitted).  When reviewing a motion to strike, the court must accept the allegations of the pleading sought to be stricken as true.  *Id.* at 821.

The Court finds that Stonestreet's complaint does not present any "insufficient defense or any redundant, immaterial, impertinent or scandalous matter" so as to warrant striking any portion of the complaint.  Clearly, the conduct alleged in Paragraphs 13-20 and 28-32 of the Complaint relate to

5

Stonestreet's allegations of conspiracy, and are not totally irrelevant to this case.  To the extent that Sauque argues that Stonestreet's allegations against him have previously been adjudicated by a California court, the Court finds Sauque's argument unfounded.  A review of the opinion from the California court reveals that Sauque was dismissed on jurisdictional grounds, without any adjudication of the allegations currently before this Court.  Accordingly, Sauque's motion to strike will be denied.

## III.   SAUQUE'S MOTION TO DISMISS

In addition to his motion to strike, Sauque has also filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Essentially, Sauque makes three arguments in support of this motion.  First, he argues that Stonestreet's allegations of fraud fail to state a claim upon which relief can be granted.  Second, he argues that Stonestreet's allegations do not state a claim for unjust enrichment.  Third, Sauque argues that the remaining counts of Stonestreet's Complaint do not state any recognized cause of action.

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the facts in the plaintiff's complaint as true.  *Hill v. Blue Cross and Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005).  A motion to dismiss may only be granted if the court finds that the plaintiff can prove no set of facts that would entitle them to relief under the allegations set forth in the Complaint. *LRL Properties v. Portage Metro Housing Auth.*, 55 F.3d 1097, 1102 (6th Cir. 1995).

### A.   FRAUD

Count One of Stonestreet's Complaint asserts that the defendants conspired to defraud Stonestreet in connection with his purchase of Buckram Oak Farm.  Specifically, Count One alleges that although Buckram Oak and Fustok were willing to sell the property for less, de Seroux, Narvick,

Headley, Martin and Sauque represented to Stonestreet that Buckram Oak and Fustok would not accept any offer below $17.5 million. As a result of this conspiracy and based on this representation, Stonestreet alleges that it ultimately purchased Buckram Oak Farm at the inflated price of $17.5 million. The defendants then received a secret commission of $500,000 for inducing Stonestreet to buy Buckram Oak Farm, despite Buckram Oak's fraudulent representation that it had not and would not pay any commission, fee, or other consideration for procuring or assisting in procuring the Buckram Oak Farm sale. As a result of the misrepresentation, Stonestreet seeks compensatory and punitive damages.

When faced with a motion to dismiss for failure to plead fraud "with particularity" as required by Rule 9(b) of the Federal Rules of Civil Procedure, "a court must factor in the policy of simplicity in pleading which the drafters of the Federal Rules codified in Rule 8" of the Federal Rules of Civil Procedure. *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988). Rule 8 requires a "short and plain statement of the claim," and calls for "simple, concise, and direct" allegations. Thus, Rule 9(b)'s particularity requirement must be "read in harmony" with Rule 8. *Id*. The purpose of Rule 9(b)'s particularity requirement is to provide the defendant fair notice of the substance of the plaintiff's claim in order that the defendant may prepare a responsive pleading. Reviewing Stonestreet's Complaint, the court is convinced that the complaint is sufficiently detailed to satisfy the notice requirement. Count One, and the supporting factual allegations, specifies the parties and participants to the alleged fraud, the representations made, the nature in which the statements are alleged to be misleading or false, the fraudulent scheme, the fraudulent intent of the defendants, reliance on the fraud, and the injury resulting from the fraud.

Nevertheless, Sauque argues that the alleged misrepresentation was an opinion, and thus

7

cannot support a fraud claim.  Under Kentucky law, for a misrepresentation to be fraudulent, it must relate to a present or pre-existing fact; a promise or statement of future intent is, as a general rule, not actionable.  *Evola Realty Co. v. Westerfield*, 251 S.W.2d 298, 300-01 (Ky. 1952); *Schroerlucke v. Hall*, 249 S.W.2d 130, 131 (Ky. 1952).   There are, however, exceptions to this general rule, as noted by the *Schroerlucke* court, which held as follows:

> It is pointed out that the state of the promisor's mind at the time he makes a promise is a fact which is exclusively within his knowledge and if intent is represented as being one thing whereas in fact it is the opposite, there is a prima facie presumption that the statement was made not as opinion but as a positive affirmation adapted to the end of inducing entrance into a contractual relation.

*Schroerlucke*, 249 S.W.2d at 131-32.  Thus, whether the alleged misrepresentation - that Buckram Oak and Fustok would not accept less than $17.5 million for the property - was a statement of opinion or present fact and whether it was made to induce Stonestreet to purchase Buckram Oak Farm at the inflated price is a question of fact.  If Sauque indeed knew Buckram Oak and Fustok's position on the value of the property, yet intended to misrepresent their position to induce Stonestreet to purchase Buckram Oak Farm, then this alleged misrepresentation is actionable as fraud.

To the extent that Sauque argues that he did not owe any fiduciary duty to Stonestreet, his argument must fail.  Stonestreet has not asserted a claim for breach of fiduciary duty against Sauque. There is simply no requirement that Sauque have a fiduciary relationship with Stonestreet before a claim of fraud may proceed.  Moreover, Sauque cannot avoid personal liability for fraud by arguing that he was acting only as an agent of Buckram Oak and Fustok.  Agency immunity simply does not extend to an agent's own intentional misconduct, including fraud.  *See* Restatement (Second) Agency § 348.   Thus, for the reasons set forth above, Sauque's motion to dismiss Stonestreet's claim of fraud will be denied.

B.      UNJUST ENRICHMENT

Sauque also seeks dismissal of Stonestreet's claim for unjust enrichment contained in Count Three of the Complaint.  Specifically, Stonestreet alleges that the defendants wrongfully received or retained undisclosed profits, payments, commissions, fees, gratuities or other forms of compensation in connection with the purchase of Buckram Oak Farm.  Based on this claim, Stonestreet seeks to recover compensatory and punitive damages.

Under Kentucky law, to succeed on a claim of unjust enrichment, the plaintiff must show the following elements: (1) a benefit conferred upon the defendant at the plaintiff's expense; (2) a resulting appreciation of the benefit by the defendant, and (3) an inequitable retention of the benefit without payment for its value.  *Guarantee Electric v. Big Rivers Electric Corp.*, 669 F.Supp. 1371, 1381 (W.D.Ky. 1987); *Tractor and Farm Supply, Inc. v. Ford New Holland, Inc.*, 898 F.Supp. 1198, 1206 (W.D.Ky. 1995).  Sauque argues that the Complaint fails to allege that he was unjustly enriched at Stonestreet's expense, and that he was entitled to a commission for his work for Buckram Oak and Fustok.

Turning to the first two elements, certainly the defendants realized a benefit at Stonestreet's expense.  By allegedly inflating the purchase price of Buckram Oak Farm, the defendants were able to divide the profit in the form of undisclosed commissions which were paid by Fustok and Buckram Oak.  This enrichment was unjust even as to Sauque, who claims that as an agent for Fustok, he was entitled to payment.  The Complaint clearly alleges that Sauque conspired with the other defendants to artificially inflate the purchase price and to arrange the kickbacks to himself and the other defendants.  Sauque's argument that there was no unjust action on his part ignores the allegations of conspiracy contained in Stonestreet's Complaint.  Accordingly, Sauque's motion to dismiss

9

Stonestreet's claim of unjust enrichment will be denied.

### C.     STONESTREET'S CLAIMS FOR RELIEF

Finally, Sauque moves to dismiss Count IV (Accounting), Count V (Disgorgement), Count VI (Civil Conspiracy), Count VII (Constructive Trust) of Stonestreet's Complaint on the grounds that Kentucky law does not provide for the forms of relief sought by Stonestreet.  With respect to Stonestreet's claim of conspiracy, Sauque argues that this claim is by necessity part of the fraud claim of Count One.  However, Kentucky courts recognize a separate cause of action for civil conspiracy, and Stonestreet is entitled to proceed on this claim.  *See James v. Wilson*, 95 S.W.3d 875, 897 (Ky. App. 2002).

Moreover, Stonestreet's claims for accounting, disgorgement and constructive trust are equitable claims recognizable by the United States Supreme Court.  *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477-78 (1962); *Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 250-51 (2000).  Stonestreet's Complaint is sufficiently pled to support a claim for these equitable remedies.  Whether or not Stonestreet can succeed on these claims is, of course, dependent upon the outcome of discovery.  Therefore, Sauque's motion to dismiss these claims will be denied.

## IV.    CONCLUSION

Based on the foregoing, and the Court being fully and sufficiently advised, IT IS HEREBY

ORDERED:

    (1)    the motion of the plaintiff for leave to file a surreply in further opposition to the defendant's motion to strike [DE # 57] is GRANTED;

    (2)    the motion of the defendant, Frederic Sauque, to strike [DE # 27] is DENIED; and

    (3)    the motion of the defendant, Frederic Sauque, to dismiss [DE # 29] is DENIED.

This the 16th day of April, 2007.

**Signed By:**

**_Karl S. Forester_** $KSF$

**United States Senior Judge**

11